1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 08cr3890 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| PALOMON SANCHEZ-LARA, | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are the motion to dismiss the indictment due to invalid deportation filed by the Defendant Palomon Sanchez-Lara (Doc. # 21) and the motion to preclude Defendant's proffered expert testimony filed by Plaintiff United States of America (Doc. # 24).

## FACTUAL BACKGROUND

Defendant came to the U.S. without permission in 1996 at approximately the age of seventeen. In 1999, Defendant was convicted of Infliction of Corporal Injury on Spouse or Cohabitant in violation of California Penal Code Section 273.5(a), a misdemeanor for which Defendant was initially sentenced to 30 days in jail and 36 months probation.

On January 17, 2003, Defendant was apprehended and taken into custody with a group of undocumented aliens in Douglas, Arizona.

On January 18, 2003, a Notice to Appear was served by the Immigration and

Naturalization Service on the Defendant alleging that he is not a citizen of the United States; that he is a citizen of Mexico; that he arrived in the United States near Douglas, Arizona on January 17, 2003; and that he was not admitted or paroled after inspection by an Immigration Officer. (Doc. # 22, Exhibit 2). Defendant was detained in the custody of the Immigration and Naturalization Service at Florence, Arizona.

On January 23, 2003, the Defendant along with twenty-five other Respondents appeared at a hearing before an Immigration Judge. All respondents, including the Defendant, were informed by the Immigration Judge that the Government claims that they entered the United States illegally and that the Government has a right to deport them. (Doc. # 21-3, Exhibit B at 1). The Immigration Judge informed all Respondents that they had the right to counsel but at no expense to the Government, that they all should have received a copy of a list of lawyers who might help then for free, and that they would be taken back to Florence if they would like time to find an attorney. (*Id.* at 3). Defendant indicated that he did not want time to find an attorney. The transcript of the hearing states in part as follows:

| | |
|---|---|
| Judge: | In these proceedings, you all have the right to have an attorney, but at no expense to the government. And you all should have received a copy of the list of lawyers who might help you for free. Did you all get that? |
| Respondents: | [Speaking Spanish] |
| Interpreter: | Yes, by all. |
| Judge: | Alright, uh, if you would like some time to find an attorney, uh, I will give you time. For example, if you, uh, tell me you would like time to find an attorney, the officers will take you back to Florence. There are lawyers that will help you, uh, for free there. Uh, they are with the, uh, Immigrants Rights Project. Uh, or you can choose your own lawyer. And, the lawyers can help you with, uh, getting a bond or, uh, reducing a bond, or with any other matter in your immigration case. Uh, if you tell me you, uh, do not want time to find an attorney, then you can speak for yourself and have your hearing today. Alright, if you have a question about your right to an attorney, or how it works, please raise your hand. |
| Interpreter: | [Speaking Spanish] None raised. |
| Judge: | Alright, I'm going to call each of your names. If you want time to find an attorney, say "Yes, I'd |

1                 like time."
                          If you don't want time to find an attorney and want

2                 your hearing today, say "No, I don't want time."

3   (*Id.* at 3).  The Immigration Judge then called out the names of each Respondent to confirm

4   whether the Respondent was requesting additional time to find an attorney.  Defendant stated:

5         Judge:       Alright, . . ., uh, Palomon Sanchez?
            Defendant:   [Speaking Spanish]

6         Interpreter:  No, I don't want it.

7   (*Id.* at 4).  When the Immigration Judge finished inquiring individually of all Respondents, he

8   addressed the group stating "[a]lright, you've all indicated you don't want, uh, time to find an

9   attorney.  You'd like your hearing now.  If you change your mind, just let me know.  I'll give

10  you time." (*Id.* at 5).

11         The Immigration Judge informed the group that he would determine whether each of

12  them should be deported, and that they would have the right to appeal the decision to a higher

13  court if they did not like the decision. (*Id.*).  The Immigration Judge informed the group that

14  they would be escorted to Mexico today if ordered removed and they did not wish to appeal,

15  and that there would be a deportation on their record "which means that  you cannot reenter

16  the United States for, uh, ten years without special permission." (*Id.* at 6).  The Immigration

17  Judge asked the group questions about their family and immigration history, including whether

18  they had lived in the United States for ten years or more, and whether a family member or

19  another person had filed a petition to immigrate them.  (*Id.* at 8).   The Immigration Judge

20  addressed voluntary departure stating as follows:

21        Judge:      I am going to ask some questions to determine if
                              there is, uh, an alternative to deportation for any of

22                       you. ...
                              Alright, um, there is a simple way to avoid, uh,

23                       deportation called voluntary departure.
                              If I grant you voluntary departure, uh, you would be

24                       escorted, uh, to Mexico just like you were being
                              deported.

25                       The difference if, you would not have a deportation
                              on your record.

26                       Uh, it does require that you have fi-, five dollars to
                              pay the Immigration Service for the bus ride to

27                       Mexico.
                            If you have five dollars, uh, then I would ask, uh,

28                       questions about your immigration and criminal
                            record to see if I should grant you voluntary

|   |   |
|---|---|
| | departure. |
| | Uh, if you have five dollars to pay for the bus ride |
| | to Mexico, please raise your hand. |
| Interpreter: | None raised. |

(*Id.* at 8).   The Immigration Judge engaged in individual colloquies with each of the twenty-six Respondents consisting of approximately six questions with each individual.  Defendant's questions and answers with the Immigration Judge were as follows:

| | |
|---|---|
| Judge: | Palomon Sanchez-Lara.  Is that your true name? |
| Defendant: | Yes. |
| Judge: | Were you born in Mexico? |
| Defendant: | Yes. |
| Judge: | Did you enter the United States near Douglas, Friday? |
| Defendant: | Yes. |
| Judge: | Did you enter illegally? |
| Defendant: | Yes. |
| Judge: | I find the charge is true and I'm ordering removal to Mexico. |
| Judge: | Do you wish to appeal? |
| Defendant: | No. |
| Judge: | Thank you. You may be seated. |

(*Id.* at 9-10).  Defendant was escorted across the border on foot on the same day.

On September 3, 2004, Defendant was convicted of Assault to Commit Rape and Assault with Great Bodily Injury and sentenced to five years in prison.

On August 4, 2008, Defendant's removal order was reinstated and he was deported.

On October 29, 2008, Defendant was arrested in an area approximately ten miles north of the United States/Mexico border with a group of approximately seven individuals heading north on a trail in an area known as La Gloria Canyon.  Defendant was subsequently charged in this case with a violation of 8 U.S.C. 1326(a) and (b). The indictment charges that on October 29, 2008, the Defendant, an alien who was previously deported, was found in the United States without the permission of the Attorney General.

## APPLICABLE STANDARD

A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987).  In order to sustain a collateral attack under §1326(d), a defendant must, within constitutional

limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair.  8 U.S.C. § 1326(d).  An underlying removal order is fundamentally unfair if: 1) an alien's due process rights were violated by defects in the underlying proceedings, and 2) he suffered prejudice as a result of the defects.  *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)(citations and quotations omitted); *see also United  States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).

**CONTENTIONS OF THE PARTIES**

Defendant contends that the Court must dismiss the indictment against him on the grounds that his due process rights were violated at his deportation hearing. Defendant contends that the Immigration Judge at his January 22, 2003 hearing failed to elicit a knowing and intelligent waiver of his right to counsel and misstated the eligibility requirements for voluntary departure.

The Government contends that the Defendant's January 22, 2003 deportation is valid. The Government asserts that the Defendant knowingly and intelligently waived his right to counsel and that the Immigration Judge was within his statutory right to determine that the Defendant was unable to voluntarily depart at his own expense.

**DISCUSSION**

***Right to counsel***

"Because a deportation hearing is a civil proceeding involving non-citizens, aliens involved in such proceedings do not enjoy the full panoply of constitutional rights that American citizens would enjoy in a criminal proceeding." *Ray v. Gonzales*, 439 F.3d 582, 587 (9th Cir. 2006).  Though there is no Sixth Amendment right to counsel in immigration proceedings, Congress has chosen to ensure that all aliens receive a full and fair hearing by providing a statutory right to counsel.  See 8 U.S.C. §§ 1229a(b)(4)(A) and 1362; *see also Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002).  In *Ray v. Gonzales*, the Court of Appeals explained that "this statutory provision stems from a constitutional guarantee of due

1    process."  439 F.3d at 587.

2        For an applicant to appear *pro se*, in an immigration proceedings, there must be a

3    knowing and voluntary waiver of the statutory right to counsel.  *United States v. Pallares-*

4    *Galan*, 359 F.3d 559, 563 (9th Cir. 2004).  For a waiver of the right to counsel to be valid, an

5    Immigration Judge must (1) inquire specifically as to whether petitioner wishes to continue

6    without a lawyer; and (2) receive a knowing and voluntary affirmative response.  *Hernandez-*

7    *Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007) (citations and quotations omitted).  The

8    Government generally bears the burden of proving waiver.  *United States v. Lopez-Vasquez*,

9    1 F.3d 751, 754 (9th Cir. 1993) (citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977)).

10       "[T]he government may conduct group deportation hearings if the proceedings comport

11   with due process."  *Lopez-Vasquez*, 1 F.3d at 754.  In *Lopez-Vasquez* , the Court concluded

12   that the mass silent waiver procedure used "impermissibly presumes acquiescence in the loss

13   of the right to appeal and fails to overcome the presumption against waiver."  *Id*. at 753.  The

14   Immigration Judge in *Lopez-Vasquez*, did not ask each member of the group whether he

15   wished to waive his rights but asked anyone who wanted to appeal to stand up so that he could

16   discuss it with them further.  *Id.*; *see also United States v. Ahumada-Aguilar*, 295 F.3d 943 (9th

17   Cir. 2002) (Immigration Judge deprived defendant of his statutory right to be represented by

18   counsel at immigration hearing where "[t]he record is silent regarding whether [defendant] and

19   other respondents who remained silent knowingly and voluntarily waived their right to

20   counsel.").

21       In this case, the Immigration Judge informed the Defendant of his right to be

22   represented by counsel in a group setting.  The Immigration Judge informed the group that they

23   all should have received a copy of a list of lawyers who might help them for free, and that they

24   would be given time to find an attorney.  (Doc. # 21-3 Exhibit 5 at 3).  The Immigration Judge

25   stated the question whether Defendant wished to have time to find an attorney or whether he

26   wanted to proceed with his hearing today in a group setting.  The Immigration Judge then

27   individually received an answer from each Respondent.  The Immigration Judge stated to the

28   group of Respondents: "If you don't want time to find an attorney and want your hearing

today, say "No, I don't want time." (*Id.*)  When individually asked to respond, the Defendant answered: "No I don't want it." (*Id.* at 4).   The Immigration Judge received an individual, affirmative and knowing response from the Defendant that he wished to proceed without counsel. Defendant's response indicated no confusion or indecision.  The Court concludes that the government has carried its burden to show a valid waiver by the Defendant of his statutory right to counsel.  There are no facts in this case which would suggest anything other than this Defendant fully understood and knowingly waived his right to counsel.  The Court concludes that the deportation proceedings in this case "comport with due process." *Lopez-Vasquez*, 1 F.3d at 754.

***Voluntary Departure***

Defendant contends that the Immigration Judge misadvised him regarding his eligibility for voluntary departure.  Defendant contends that the Immigration Judge erred by informing the assembled Respondents that they would not be considered for voluntary departure unless they had five dollars to pay for their return to Mexico.  Defendant contends that the Immigration Judge must consider an applicant for voluntary departure without regard for his ability to pay.  In addition, Defendant submits a declaration stating that he would have been able to obtain five dollars had he known that it would help him reenter the United States legally in the future.  The Government contends that the Immigration Judge properly inquired as to the Defendant's ability to voluntarily depart at his own expense, and properly exercised his discretion not to further consider the Defendant's eligibility for voluntary departure.  The Government contends that voluntary departure is discretionary and the Defendant cannot show prejudice, even assuming a defect in the proceedings.

Pre-conclusion voluntary departure under 8  U.S.C. Section 1229c(a) provides that "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under Section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title." 8 U.S.C. Section 1229c(a)(1).  Voluntary departure is a form of discretionary relief. *Tovar-Landin v. Ashcroft*,

361 F.3d 1164, 1166 (9th Cir. 2004).  The Court of Appeals for the Ninth Circuit has held that "discretionary relief [from deportation] is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause." *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003).

Section 1229c(a) specifically states that the Attorney General may permit an alien to voluntarily depart "at the alien's own expense." 8 U.S.C. § 1229c(a)(1).  The Court concludes that the Immigration Judge did not violate Defendant's fundamental rights when he inquired whether Defendant had the funds to pay for the bus ride to the border.  The Immigration Judge adequately advised the Defendant of the requirements of voluntary departure and explained the benefits of voluntary departure in lieu of removal.  Having determined that Defendant was not able to depart at his own expense, the Immigration Judge was within his  discretion not to further consider the Defendant's eligibility for voluntary departure.

## CONCLUSION

The Court concludes that Defendant has not demonstrated that the removal proceedings were fundamentally unfair.  Defendant's due process rights were not violated by defects in the underlying proceedings.

IT IS HEREBY ORDERED that the motion to dismiss indictment due to invalid deportation filed by the Defendant Palomon Sanchez-Lara (Doc. # 21) is denied and the motion to preclude Defendant's proffered expert testimony filed by Plaintiff United States of America (Doc. # 24) is moot.

DATED:  May 11, 2009

**WILLIAM Q. HAYES**
United States District Judge